UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ERBSLOEH ALUMINIUM SOLUTIONS, INC., )<br>           Plaintiff,             )<br>                                   )<br>-v-                                )<br>                                   )<br>MUEKO MACHINERY, INC.,             )<br>           Defendant.              )<br>                                   ) | No. 1:22-cv-537<br><br>Honorable Paul L. Maloney |

## OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO RESPOND

Plaintiff Erbsloeh Aluminum Solutions filed a verified complaint and a motion for a temporary restraining order (ECF No. 2). Plaintiff asks the Court to order "Defendant to immediately deliver to Plaintiff the IP and Software and Support Services necessary to operate the Assembly Line." (ECF No. 2 PageID.91.) The Court will deny the motion and will order Defendant MueKo Machinery to file a response.

I.

Plaintiff produces aluminum products, including products for Ford Motor Company. Plaintiff alleges that it entered into a contract with Defendant for the sale of an assembly line which Plaintiff would use to make parts for use in Ford's F-150 line of trucks.

Plaintiff alleges that the agreement with Defendant consists of seven purchase orders. Each purchase order incorporates General Terms and Conditions of Purchase. (*See, e.g.,* ECF No. 1-1 PageID.17.) The language on each purchase order states that the terms and

conditions document can be found on a website.[1] (*Id.*) The General Terms and Conditions document states that when goods

> include computer programs, including, where applicable, object code (including microcode) and source code, and any enhancements, modifications, updates or releases relating thereto ("Software"), Seller shall obtain and provide to Buyer unrestricted usage rights, which shall be freely transferable, and shall provide Buyer with all documentation related to the Software, including user manuals, training materials, product descriptions and applicable specifications, technical manuals and supporting materials, developed documents, and other printed or electronic information.

(ECF No. 1-2 PageID.39.)

Plaintiff makes a number of factual assertions in the complaint about the agreement. First, Plaintiff contends Defendant has been paid in full. Second, Plaintiff contends the assembly line initially did not work as required. Plaintiff insists it provided Defendant with opportunities to correct the issues. On April 22, 2022, Plaintiff declared Defendant in default and identified 25 issues that remained unresolved. (*See* ECF No. 1-3 PageID.60.)

Following a meeting between the parties, Defendant demanded $600,000 allegedly overdue based on the purchase orders. Defendant also demanded additional payments. On May 17, 2022, Plaintiff offered to pay $600,000. (ECF No. 1-4 PageID.64.) For that money, Plaintiff demanded that

> Mueko shall immediately provide EAS with all passwords, (including read/write access passwords), part-lists, schematics and drawings for the Assembly Line and all related software and hardware (together the "IP and Software") consistent with WKW's Terms and Conditions for the delivery of IP and Software.

---

[1] The web address provided directs the reader to the website for Walter Klein GmbH & Company KG.

(*Id.*)  Plaintiff paid approximately $478,000 to Defendant on or about May 19 and then again demanded all passwords to the software.  (ECF No. 1-5 PageID.66.)

On May 25, 2022, Defendant denied that Plaintiff had fully paid the outstanding invoices.  (ECF No. 1-6 PageID.69.)  Defendant alleged Plaintiff still owed approximately $140,000.  (*Id.*)  Defendant denied any contractual obligation to provide passwords and related software and hardware to Plaintiff.  (*Id.*)  Defendant also alleged that Plaintiff had recently hired Defendant's programmer who was in charge of the project.  (*Id.*)  Defendant indicated that unless Plaintiff committed to paying for the on-site support, training and commissioning services, Defendant would suspend its performance on May 30, 2022.  (*Id.*)

In the complaint, Plaintiff alleges it paid the additional $140,000. (ECF No. 1 Compl. ¶ 36 PageID.9.)

Plaintiff alleges that without the IP and Software, it "will not be able to use or maximize functionality of the Assembly Line." (Compl. ¶ 39 PageID.10.)  Plaintiff alleges that Defendant's failure to provide the IP and Software constitutes a breach of their agreement.

## II.

Rule 65(b) of the Federal Rules of Civil Procedure governs requests for temporary restraining orders.  District court exercise their discretion when granting or denying preliminary injunctions. *Northeast Ohio Coalition for Homeless and Serv. Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  When deciding a motion for a temporary restraining order or for a preliminary injunction, a court should consider and balance four factors: (1) whether the plaintiff has established a substantial likelihood or

probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff without the order; (3) whether an injunction would cause substantial harm to others; and (4) whether granting injunctive relief services the public's interest. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020) (preliminary injunction); *see Summit Cty. Democratic Cent. And Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) (stating that the four factors are the same for both types of relief). Our United States Supreme Court cautions that temporary restraining orders are extraordinary and drastic remedies that may be issued only under "stringent restrictions" and their limited availability "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 438-39 (1974)

A. Likelihood of Success on the Merits

This factor does not weigh in favor of granting a temporary restraining order. The facts alleged in the complaint, in combination with the exhibits attached to the complaint, do not establish a "substantial likelihood" that Plaintiff will succeed on the merits of its breach of contract claim. To be clear, the Court has not decided that Plaintiff will succeed or fail on the breach of contract claim. Plaintiff has not established that the General Terms and Conditions define the phrase "usage rights." The Court is not familiar with the phrase and, for the purpose of this motion only, Plaintiff has not sufficiently established that the phrase is a term of art with a particular meaning. At this point in the litigation, the phrase "usage rights" in the General Terms and Conditions does not indisputably require Defendant to

turn over to Plaintiff what Plaintiff describes as "IP and Software." If the phrase "usage rights" does not require what Plaintiff has demanded, the Court questions the appropriateness of the relief sought in this motion. Typically, when the plaintiff cannot establish a likelihood of success on the merits courts will deny the request for injunctive relief. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

Plaintiff's conclusory assertion in the motion demonstrates this particular concern. Plaintiff insists that "IP and Software constitute ancillary components or engineering elements of the Assembly Line because they are necessary to the operation of the Assembly Line; without them, the Assembly Line does not function properly, and is unacceptably vulnerable to shutdown." (ECF No. 2 PageID.85.) This statement does not explain how the requested passwords are necessary to the proper operation of the Assembly Line. From what the Court can discern, Plaintiff has the assembly line, including the software. And, Plaintiff has the rights necessary to use the software that operates the assembly line. Plaintiff has not explained how Defendant's refusal to provide read-write passwords, among other things, means that "Plaintiff will imminently be unable to operate the Assembly Line. . . ." (*Id.* PageID.86.)

B.  Irreparable Injury

Where a plaintiff has not established a high likelihood of success on the merits, the plaintiff must show a "serious danger of irreparable harm absent an injunction." *Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997) (explaining that the showing of success on the merits "varies inversely" with the injury a plaintiff might suffer). Rule 65(b) requires more than simply establishing an irreparable injury. The rule requires the moving party to show

that it will suffer an irreparable injury "before the adverse party can be heard in opposition. Fed. R. Civ. P. 65(b)(1)(A). Plaintiff has not met this requirement. First, Plaintiff has not alleged sufficient facts to show that it will suffer an *irreparable* injury. Plaintiff predicts that without the IP and Software, the assembly line will remain only partially functional and that it will not be able to meet Ford's releases. Plaintiff's damages, however, would be calculable. Plaintiff would be able to determine lost profits based on lost sales to Ford. Plaintiff would also be able to determine any penalties or fees (backcharges) associated with its inability to provide Ford with the requested parts. The Sixth Circuit has held that "the *existence* of an irreparable injury is mandatory." *D.T. v. Sumner Cty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (italics in original).

Second, Plaintiff has not alleged sufficient facts to show that *Plaintiff* will be irreparably harmed. Plaintiff predicts that without its parts, Ford would have to shut down production of F-150 trucks causing catastrophic supply-chain disruption. Plaintiff describes an injury to Ford, not to Plaintiff. Ford Motor Company is not a party to this lawsuit.

Finally, Plaintiff has not alleged facts to show that the injury will occur *before* Defendant can be heard in opposition. In the complaint, Plaintiff alleges that "Defendant has also indicated that it is unable to provide the Support Services to Plaintiff after June 16, 2022." (Compl. ¶ 40 PageID.10.) In the motion, Plaintiff explains that the agreement includes "all training and production support required by the Purchase Orders (the "Support Services") to Plaintiff without additional charge." (ECF No. 2 PageID.77.) Plaintiff later refers to ¶ 18(d) of the General Terms and Conditions document (*id* PageID.79), which provides that

> Seller, at its sole cost and expense, shall furnish any and all appropriate safety systems and training for use of Furnished Property, including any which are integrated into the production process, so as to meet all applicable federal, state, provincial, and local safety statutes, rules, regulations, and/or codes for the place in which the Furnished Property will be used and otherwise to reduce or eliminate all known or reasonably foreseeable risks of injury to users or bystanders.

(ECF No. 1-2 PageID.47.) Whatever services ¶ 18(d) obligates Defendant to provide, Plaintiff has not sufficiently established that the termination of those services will force the shutdown of the assembly line on June 16.

### C.  Harm to Others and the Public's Interest

Given Plaintiff's minimal showings on the first two factors, the Court declines to find that the balance of equities weighs in favor of granting a temporary restraining order. The Court finds that the relief requested by Plaintiff would likely harm Defendant. The information and access sought by Plaintiff could not easily be undone. While a shutdown of the product of F-150 might be a grave concern for the public's interest, Plaintiff's factual allegations do sufficiently connect the lack of IP and Software to the imminent shutdown of the assembly line. The risk to the public's interest is, therefore, somewhat attenuated.

### III.

The balance of the factors weighs against issuing a temporary restraining order. Plaintiff has not made a sufficient showing for a likelihood of success on the merits. Neither has Plaintiff made a compelling argument to show that it will suffer an irreparable injury before Defendant can be heard in opposition.

## ORDER

The Court **DENIES** Plaintiff Erbsloeh Aluminum Solution's motion for a temporary restraining order. (ECF No. 2.) The Court will consider Plaintiff's motion in the alternative, a request for a preliminary injunction. Plaintiff must file proof of service no later than Friday, June 17, 2022. Defendant MueKo Machinery **MUST FILE** a response to Plaintiff's motion no later than Thursday, June 23, 2022, at 12:00 p.m. (noon). Upon review of the response, the Court will consider whether to hold a hearing for Plaintiff's request for a preliminary injunction. **IT IS SO ORDERED.**

Date:   June 15, 2022                                                          /s/ Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge